UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

CANDISS DAVIS, and
LAKESHA HUDSON,
*on behalf of themselves and all
other similarly situated individuals*,[1]

Plaintiffs,

v.   Action No. 4:19cv55

KAYREE, INC.,
*doing business as* Club Paradise II,
ANTHONY ROMINIYI, and
CATHERINE ROMINIYI,

Defendants.

## UNITED STATE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the parties' joint motion for approval of general release and settlement agreement and dismissal with prejudice. ECF No. 24. The motion was referred to the undersigned United States Magistrate Judge on January 29, 2020, pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). ECF No. 25. For the reasons discussed below, the undersigned recommends that the motion be **GRANTED**.

### I.  FACTUAL AND PROCEDURAL HISTORY

Defendant, Kayree, Inc., d/b/a Club Paradise II ("Club Paradise II"), is a gentlemen's club in Newport News, Virginia, owned and managed by Anthony and Catherine Rominiyi

---

[1] No motion for conditional certification has been filed, and the proposed settlement agreement among the parties only purports to settle with the two named plaintiffs, Candiss Davis and Lakesha Hudson. *See* ECF No. 21.

(collectively, "defendants"). Amended Complaint[2] ("Am. Compl.") ¶¶ 2–8, ECF No. 7. Plaintiffs, Candiss Davis ("Davis") and Lakesha Hudson ("Hudson") were employed as exotic dancers at Club Paradise II. *Id.* at ¶ 13. On July 11, 2019, Davis and Hudson filed a two-count complaint on behalf of themselves and all other similarly situated individuals who worked as exotic dancers during the period of June 16 through the final judgment of this case, alleging defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19. *Id.* at ¶¶ 41–56.

In count one, Davis and Hudson (together, "plaintiffs") allege that defendants violated the FLSA by (1) willfully failing to pay plaintiffs at an hourly rate at least equal to the federal minimum wage and in compliance with FLSA federal minimum wage requirements; and (2) keeping and/or assigning to management the tips and gratuities that plaintiffs received from customers. *Id.* at ¶¶ 42–46.

In count two, plaintiffs allege that, after submitting letters to defendants alerting them of their alleged FLSA violations, and after filing their initial complaint, defendants retaliated against plaintiffs in the following ways: (1) spreading false accusations about plaintiffs, which were intended to embarrass and disparage plaintiffs to their co-workers, associates, and other third parties; (2) forbidding plaintiffs from entering into or working as exotic dancers at Club Paradise II; and (3) contacting other area businesses and gentlemen's clubs with the purpose of ensuring those businesses would not hire plaintiffs, thereby causing plaintiffs to suffer economic and emotional damages. *Id.* at ¶¶ 47–56.

Plaintiffs seek recovery of unpaid wages including all tips and gratuities, liquidated damages, economic and compensatory damages, and reasonable attorney's fees and costs. Am.

---

[2] Plaintiffs filed their original complaint on June 4, 2019, but amended the complaint to add defendants Anthony and Catherine Rominiyi, the individual owners of Club Paradise II, on July 22, 2019. ECF Nos. 1, 7.

Compl. at 10–11. On September 10, 2019, defendants filed answers, denying that plaintiffs were ever employees of Club Paradise II. ECF Nos. 15–17 at ¶¶ 5, 18–31, 35, 37, 39, 42. As to count one, defendants deny that they violated the FLSA, or that their actions were "willful and intentional and . . . not in good faith." *Id.* at ¶ 42–46; Am. Compl. ¶¶ 42–46. Regarding count two, defendants deny that they retaliated against plaintiffs for their engagement in FLSA protected activity. ECF Nos. 15–17 at ¶¶ 51–53, 55–56; Am. Compl. ¶¶ 47–56.

Pursuant to scheduling orders entered by the Court, discovery commenced on September 23, 2019, discovery was to be completed by March 24, 2020, and the case was set for trial on April 28, 2020. ECF Nos. 18, 20. On January 24, 2020, the parties filed a joint motion for approval of general release and settlement agreement and dismissal with prejudice. ECF No. 24. According to the parties' proposed settlement agreement signed on January 9, 2020, ECF No. 24-1, defendants agreed to pay plaintiffs $7,000.00 (including fees and costs) in return for a release of all claims. *Id.* at 2–4.

The undersigned issued an order directing the parties to file briefs by March 6, 2020, addressing the factors to be considered in assessing the fairness and reasonableness of the proposed settlement, including any award of attorney's fees. ECF No. 26 at 1. Plaintiffs filed a supporting affidavit to the joint motion for settlement approval and dismissal ("Pls.' Decl.") on March 6, 2020. ECF No. 27. Defendants' counsel subsequently filed a declaration ("Defs.' Decl."), on March 6, 2020, supporting and adopting plaintiffs' affidavit. ECF No. 28. After review of the parties' submissions, the undersigned concludes oral argument is unnecessary.

## II. DISCUSSION

### A. Factors applicable to consideration of a proposed settlement in an FLSA case

Before a private litigant may compromise a claim alleging a violation of the FLSA, any

3

proposed settlement must be approved by either a court or the United States Department of Labor. *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310, 2009 WL 3094955, at *8 (E.D. Va. Sept. 28, 2009); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *see Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007) (noting, in dicta, that "[u]nder the FLSA, . . . there is a judicial prohibition against the unsupervised waiver or settlement of claims"). The Court, therefore, must determine whether the proposed settlement represents a fair and reasonable compromise of a bona fide dispute about the application of the FLSA to the case at hand. *Galvez v. Americlean Servs. Corp.*, No. 1:11cv1351 (JCC/TCB), 2012 WL 1715689, at *2 (E.D. Va. May 15, 2012); *Lomascolo*, 2009 WL 3094955, at *8.

The following factors are to be considered in assessing a proposed settlement of an FLSA claim:

1. the extent of discovery that has taken place;

2. the stage of the proceedings, including the complexity, expense and likely duration of the litigation;

3. the absence of fraud or collusion in the settlement;

4. the experience of counsel who have represented the plaintiffs;

5. the probability of plaintiffs' success on the merits[;] and

6. the amount of the settlement in relation to the potential recovery.

*Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014).

**B.     Application of the factors to the proposed settlement**

> **1.     The parties reached the proposed settlement before conducting significant discovery, but had sufficiently assessed plaintiffs' claims and the viability of defendants' defenses.**

The Court will consider the first and second factors together. At the time the parties submitted their joint motion on January 24, 2020, the matter was in a "relatively early stage" and

4

the parties had not engaged in considerable discovery. Pls.' Decl. ¶ 3. An initial scheduling order was entered in this case on September 23, 2019, which stipulated that the parties could "initiate any form of discovery at anytime subsequent to the date of this order." ECF No. 18 at 1–2. One month later, on October 29, 2019, the parties jointly requested a settlement conference. ECF No. 21. The parties were scheduled to participate in a settlement conference before a United States Magistrate Judge on January 14, 2020. ECF No. 23. Before the conference, however, the parties signed a settlement agreement dated January 9, 2020, and reported settling the case on January 24, 2020. *See* ECF No. 24; 24-1.

Despite being in the early stages of the case, in anticipation of the January 14, 2020 settlement conference, the parties "engaged in a voluntary exchange of discovery, including a voluntary exchange of relevant facts and legal considerations effecting [sic] the merits of Plaintiffs' claims and the viability of Defendants' defenses." Pls.' Decl. ¶ 3. As agreed by the parties, document discovery prior to settlement was limited, "as neither party ha[d] any documentation evincing the work or dancer relationship Plaintiffs held at Defendants' gentlemen's club." *Id.*; Defs.' Decl. ¶¶ 4, 6–8.

The parties agree they had adequate time to assess the "details and viability of each Parties' claims and defenses and financial capacity to satisfy any potential judgment." *See* ECF No. 24 at 6; Pls.' Decl. ¶ 3. Accordingly, the parties had exchanged information sufficient to "fairly evaluate the liability and financial aspects of [the] case." *Lomascolo*, 2009 WL 3094955, at * 11 (citation and quotation marks omitted); *see Hackett v. ADF Restaurant Investments*, 259 F. Supp. 3d 360, 366 (D. Md. 2016) ("Parties may settle an FLSA case at an early stage provided that a plaintiff has had sufficient opportunity to evaluate the viability of his or her claims and the potential range of recovery.") (citation omitted).

As for the second factor—the stage of the proceedings, including the complexity, expense and likely duration of the litigation—by settling at an early stage, the parties note they are able to avoid inconvenience and additional expenses that would be incurred in formal discovery, trial preparation, and at trial. ECF No. 24 at 6. *See Chavez v. Besie's Corp.*, No. GJH-14-1338, 2015 WL 1546299, at *3 (D. Md. Apr. 3, 2015) ("Given the current stage of the litigation, significant expenses would be incurred if the parties continued with formal discovery, dispositive motions, and possibly trial.") (citation omitted). Accordingly, consideration of the first and second factors support approval of the parties' proposed settlement agreement.

### 2. The proposed settlement is free of fraud or collusion.

Absent evidence to the contrary, a court may presume the parties have not engaged in fraudulent misconduct or colluded with one another in reaching a fair and reasonable settlement. *See Winingear v. City of Norfolk*, No. 2:12cv560, 2014 WL 3500996, at *3 (E.D. Va. July 14, 2014) (citation omitted). There is no evidence of misconduct in this matter. To the contrary, the record indicates that plaintiffs filed their amended complaint on July 11, 2019, defendants contested plaintiffs' claim to relief on September 10, 2019, and the parties exchanged information to help assess the merits of the claims and defenses. Pls.' Decl. ¶ 3. The parties then engaged in negotiations and reached an "arms-length settlement with counsel on each side representing the best interests of counsel's clients." Pls.' Decl. ¶¶ 3, 9, 11; Defs.' Decl. ¶¶ 3–5, 8. Both sides deem the resolution reached to be satisfactory. *Id.* Against this backdrop and after review of the proposed general release and settlement, the Court is convinced that no fraud or collusion was involved in reaching the proposed settlement agreement.

### 3. Plaintiffs' attorney is competent and experienced, including in wage and hour litigation.

Plaintiffs are represented by counsel with extensive experience, particularly in state and federal wage and hour law and litigation. ECF No. 27 at ¶ 10. This experience includes dedicating the "entirety of undersigned counsel's legal career" on prosecuting FLSA actions on behalf of individuals as well as classes of individuals. *Id.* at ¶¶ 5, 10. While counsel's opinions concerning the settlement are not binding, the Court may consider and, when appropriate, rely upon the judgment of counsel with experience in litigating FLSA cases in assessing whether a proposed settlement is fair and reasonable. *Devine v. City of Hampton*, No. 4:14cv81, 2015 WL 10793424, at *2 (E.D. Va. Dec. 1, 2015). Here, counsel asserts that the "settlement was primarily driven by ... the amount of the settlement in relation to the potential recovery" following defendants' loss of their liquor license and business, their only source of revenue. Pls.' Decl. ¶¶ 7, 8, 11. After learning this information, plaintiffs and plaintiffs' counsel realized that defendants "would have zero resources to fund a ... future settlement," and therefore agreed to settle the matter for $7,000.00, inclusive of all attorney's fees and costs. *Id.* at ¶¶ 8–9. In light of defendants' financial hardship, plaintiffs' counsel asserts that "the Settlement in this matter ... is fair and reasonable and should be approved by the Court." *Id.* at ¶ 11.

### 4. A practical assessment of defendants' financial condition following the loss of their liquor license and close of their business, as well as the parties' desire to avoid the cost and inconvenience of litigation, support approval of the proposed settlement.

In the present matter, the crux of the parties' dispute turns upon whether defendants improperly classified plaintiffs as independent contractors exempt from the provisions of the FLSA. Pls.' Decl. ¶ 6; *see* 29 U.S.C. §§ 201–219 (listing wage and hour requirements for employees).

7

Defendants assert that plaintiffs are entitled to no relief under the FLSA.[3] Pls.' Decl. ¶ 6; ECF No. 24 at 4–5. To that end, defendants contend that the economic realities and "total freedom" of plaintiffs' exotic dancer relationship with defendants "w[ere] indicative of an independent contractor relationship." Pls.' Decl. ¶ 6; *see also* ECF No. 24 at 5 (indicating a bona fide dispute between the parties). Nevertheless, recognizing the "nature and law associated with Plaintiffs' claim as well as any defense which may [have been] available to them," and their precarious financial position, the defendants decided to settle the dispute. Defs.' Decl. ¶¶ 4–6.

Plaintiffs assert they were employees under the FLSA and were therefore entitled to "unpaid minimum wage compensation and associated damages" related to defendants' charging plaintiffs "various fees, kickbacks, and sur-charges" for working at Club Paradise II. Pls.' Decl. ¶ 6; ECF No. 24 at 2. Due to the fact-intensive nature of any determination to classify plaintiffs as independent contractors or employees, the outcome of this matter is far from certain and both sides face potential risks in continuing to litigate.

Another significant risk in continuing to litigate is the availability of any potential recovery. As both parties concede, a primary factor leading to settlement was consideration of "the amount of the settlement in relation to the potential recovery." Pls.' Decl. ¶ 7; *see* Defs.' Decl. ¶ 7. After the filing of the complaint, plaintiffs learned that Club Paradise II "lost its liquor license, was out of business, and was no longer generating revenue." Pls.' Decl. ¶ 7. Also, the individual defendants "had no independent source of income" and, due to prior felony convictions, were also

---

[3] Defendants assert that plaintiffs were independent contractors rather than employees with FLSA rights. Pls.' Decl. ¶ 6. Although agreeing to settle, defendants have made no concessions concerning the plaintiffs' status. *See id.*

8

required to pay court-ordered restitution.[4] *Id.* Consequently, defendants made a total settlement offer of $7,000.00 to be divided as follows: "Plaintiff Candiss Davis receiving $1,750.00, Plaintiff Lakesha Hudson receiving $1,750.00, and payment of attorney's fees and costs in the total amount of $3,500.00." *Id.* at ¶ 9; ECF No. 24-1 at 2.

After learning of defendants' financial state, plaintiffs "understood and reasonably believed that if the matter were to proceed forward, Defendants would have zero resources to fund a defense, future settlement, or satisfy a monetary judgment," in the event of a favorable outcome at trial. Pls.' Decl. ¶ 8. In defendants' own words, "the ability of the Defendants to put together a settlement offer of $7,000 to resolve this matter required a significant undertaking, with the understanding as to how the reaching of the settlement may affect their individual financial status in the future." Defs.' Decl. ¶ 7.

The amended complaint seeks the following forms of relief: "liquidated damages in amounts prescribed by the FLSA"[5]; "economic and compensatory damages against Defendants, jointly and severally, in the amount of $250,00.00 to each Plaintiff" for the economic losses and emotional suffering they endured as a result of defendants' FLSA retaliation; and attorney's fees and costs. Am. Compl. at 11. Due to the lack of documentation regarding the extent of plaintiffs' work for defendants, the actual amount plaintiffs may be entitled to recoup in the form of lost

---

[4] Plaintiff note that defendants allowed them an opportunity to review documents confirming defendants' financial condition. Pls.' Decl. ¶ 7.

[5] Employers who violate sections 206 (minimum wage) "shall be liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional *equal amount as liquidated damages.*" *Id.* (emphasis added). Employers who violate section 215(a)(3) (retaliation) "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, reinstatement, promotion, and the payment of wages lost and an additional *equal amount as liquidated damages.*" *Id.* (emphasis added).

wages, tips and gratuities, and "kickbacks," pursuant to 29 U.S.C. § 216(b), is not known.[6] *See id.* at ¶¶ 30–35. Therefore, it is difficult to estimate plaintiffs' potential recovery should they prevail at trial.

The parties engaged in informal discovery, and reached "an amicable resolution," with "full knowledge of the details and viability of each Parties' claims and defenses and financial capacity to satisfy any potential judgment." ECF No. 24 at 6. "'The parties devoted a significant amount of time to settlement negotiations." *Id.* (quoting *Ellis v. Panco Mgmt. of N.J., LLC*, 2017 U.S. Dist. LEXIS 156079, at *4 (D. Md. Sept. 25, 2017)). Additionally, plaintiffs' counsel is "well experienced in employment litigation, including single-party and collective-action wage and hour litigation," and, knowing the risks his clients faced in light of defendants' financial uncertainty, "recommended that his client[s] accept[] and sign the Agreement." ECF No. 24 at 6.

Plaintiffs occupy a uniquely precarious position as a result of defendants' loss of business and apparent consequent inability to satisfy any future monetary judgment.[7] Defs.' Decl. ¶ 6; Pls.' Decl. ¶ 8. In jointly taking the risks of the litigation into their own hands, cutting off the continued expenditure of fees and costs, and compromising the case in light of defendants' financial reality, the parties have reached a reasonable resolution of this dispute.

---

[6] This factor is not dispositive. *See Eguizabal v. Hu and Tan, Inc.*, No. PWG-17-614, 2018 WL 805391, at *2 (D. Md. Feb. 9, 2018) (approving a settlement agreement even though discovery "was not fruitful in fully determining the precise amount of money owed to [plaintiff]").

[7] *See also Nyamira v. Little Kampala Servs., LLC*, No. DKC 17-3379, 2018 WL 5026371, at *3 (D. Md. Oct. 17, 2018) (finding that, although the parties' settlement amount in unpaid wages and liquidated damages was a "substantial departure from the amount Plaintiff . . . originally requested," the amount was fair and reasonable resolution of the parties' bona fide dispute because the parties had engaged in "private settlement discussions based on their independent calculations" and "attest to the fairness and reasonableness of their amicable settlement.").

### 5. The proposed settlement's payment of fees and costs to plaintiffs' counsel is fair and reasonable.

The proposed settlement also provides for defendants to pay $3,500.00 as attorney's fees and costs to plaintiffs' counsel.[8] ECF No. 24-1 at 2; Pls.' Decl. ¶¶ 9–10; *see* 29 U.S.C. § 216(b) (authorizing award of reasonable attorney's fees and costs to successful FLSA plaintiffs). Although the Court may defer to the parties' voluntary agreement when assessing the reasonableness of any award for fees and costs, additional judicial scrutiny is also required as a check upon excessive awards and to ensure that an employee's recovery is not tainted by any possible conflict of interest. *Epps v. Scaffolding Sols., LLC*, No. 2:17cv562, 2019 WL 6888546, at *4 (E.D. Va. Dec. 11, 2019) (discussing need for "lodestar" calculation of hours reasonably expended multiplied by a reasonable hourly rate); *Devine*, 2015 WL 10793424, at *3 (same); *see also Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009) (discussing factors guiding assessment of reasonable rates and hours).

To support the proposed award of fees and costs, plaintiffs' counsel, Gregg C. Greenberg ("Greenberg"), has supplied the court with a declaration, describing his education, bar status, legal experience, plaintiffs' claim and dispute with defendants, an itemization of the agreed settlement resolution including attorney's fees and costs, and an explanation of his hourly billing rate ($350.00) and hours expended (37.7) on plaintiffs' case. Pls.' Decl. ¶¶ 6, 9–10.

The proposed award of fees and costs represents 50% of the total sum to be paid out by defendants of $7,000.00. Plaintiffs' counsel agreed to represent plaintiffs on a contingency basis, promising "to accept payment of attorney's fees only if successful in the litigation." *Id.* at ¶ 10. Customarily, plaintiffs' counsel bills hourly clients at the rate of $350.00 per hour. *Id.* The

---

[8] The costs incurred total $720.00. Pls.' Decl. ¶ 10.

proposed allocation of attorney's fees ($2,780.00) and costs ($720.00) is substantially less than the total of the hours billed multiplied by the hourly rate (37.7 hours x $350.00 = $13,195.00). *Id.* This proposed fee award represents a reduction in counsel's hours to approximately 7.9 (7.9 hours x $350.00 = $2,765.00), or a reduction in counsel's hourly rate to $73.74 ($2,780.00 divided by 37.7 hours = $73.74). Although the fee award represents 50% of the total recovered by plaintiffs in this case, given the reduction in counsel's normal fee, this amount is not excessive.

In light of defendants' loss of business and current financial status, the Court is satisfied, consistent with Greenberg's assessment of the "facts and realities" of this case, that the proposed award of $3,500.00 for plaintiffs' attorney's fees and costs is fair and reasonable.

## C. Conclusion

Accordingly, the Court finds the proposed settlement among the parties to be a fair and reasonable compromise of the parties' dispute.

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that the parties' joint motion for approval of settlement and dismissal of action with prejudice, ECF No. 24, be **GRANTED**.

### IV. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A

party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
March 23, 2020